UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Stephen J. Horner,<br><br>      Plaintiff<br><br>v.<br><br>Steve Sisolak, et al.,<br><br>      Defendants | Case No. 2:22-cv-00012-CDS-NJK<br><br>**Order Denying Motions for Recusal and to Proceed to Trial, Granting Motion to Dismiss, and Closing Case**<br><br>[ECF Nos. 7, 12, 18] |

      Pro se plaintiff Stephen Horner sues Nevada Governor Steve Sisolak and four Sisolak-appointed Nevada Equal Rights Commission (NERC) employees, alleging that they collaborated to violate his right to equal protection under the Fourteenth Amendment. ECF No. 1. Horner contends that they did so by dismissing a complaint that he filed with the NERC, which alleged that he was charged an entrance fee to a casino pool party while women were admitted for free during a "ladies' night." *Id.* Horner moves for the recusal of the two female judges who were initially assigned to this case and moves to proceed to trial. ECF No. 7; ECF No. 18. The defendants move to dismiss under Federal Rules of Civil Procedure (FRCP) 12(b)(1) and (6), classifying Horner as "a serial litigant who has repeatedly—and unsuccessfully—sued Nevada officials for not preventing private businesses from holding 'ladies' nights.'" ECF No. 12 at 1–2. Because the district judge that Horner seeks to recuse is no longer assigned to this case, I deny Horner's motion to recuse as moot. And because issue preclusion prevents Horner from relitigating a matter that the Nevada Court of Appeals has already ruled on, I grant the

defendants' motion to dismiss and close this case. Horner's motion to proceed to trial is therefore moot and hereby denied.

     I.     **Horner's motion to recuse Judge Dorsey is denied as moot.**

The Honorable United States District Court Judge Jennifer Dorsey was initially assigned to preside over this case. Horner moves for Judge Dorsey to "recuse [herself] because [her] gender, female, imposes an inherent conflict of interest in this extremely volatile case which involves granting special favors to women based on their gender." ECF No. 7 at 1. He states that "a woman's inherent sentimentalism is no match for a man's pragmatism in cases like this[,] and the woman is rarely able to dismiss her inherent gender biases." *Id.* But this case was reassigned from Judge Dorsey to me in April, so she is no longer presiding over it. ECF No. 27 (clerk's notice of reassignment). I therefore deny Horner's motion to recuse Judge Dorsey as moot because she isn't the district judge assigned to this case.

While I am denying Horner's motion to recuse as moot, I also consider the merits of the motion. In doing so, I find that the basis for his request to recuse female judges is without merit. As the magistrate judge wrote in denying Horner's request for her recusal based on her gender, the "allegations of bias are founded on nothing more than speculation," and Horner "failed to allege facts stating a cognizable ground for recusal under 28 U.S.C. § 144, 28 U.S.C. § 455, or otherwise." ECF No. 10 at 2. I find the magistrate judge's reasoning persuasive and adopt it here. "The standard for judging the appearance of partiality requiring recusal under 28 U.S.C. § 455 is an objective one and involves ascertaining 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)) (other citations omitted). "But a party challenging a judge for bias needs to show facts, not merely [his or] her opinion, to demonstrate the judge's actual or apparent bias to

justify recusal." *Jensen v. Santa Clara Cnty.*, 32 F. App'x. 203, 206 (9th Cir. 2002) (unpublished) (citing *Preston*, 923 F.2d at 734). Horner has alleged no facts other than his conclusory claim that women cannot and should not decide his case. He has thus failed to show that a reasonable person would question the impartiality of any of the involved judges.

## II. Issue preclusion bars Horner from relitigating this case.

All five defendants move to dismiss Horner's complaint under FRCP 12(b)(1) and (6). They assert that "[t]he Nevada Court of Appeals has already ruled against Horner on the same issue he raises here" and that "[e]ven if issue preclusion didn't doom the complaint, Horner's claim fails as a matter of law" because the named defendants cannot be sued in their individual capacities due to qualified immunity.[1] ECF No. 12 at 2. Horner opposes their motion and argues that this case is "totally different" from his previously filed cases because it "emanated from the alleged gender discrimination from a completely different place of public accommodation." ECF No. 17 at 2. The defendants rebut that Horner "points to differences . . . that are irrelevant under Nevada issue-preclusion doctrine." ECF No. 21 at 2.

The defendants state that "this is Horner's third lawsuit against Nevada for the same claim." ECF No. 12 at 2. They elaborate that Horner brought a similar claim in 2016 after the NERC relied on Nevada Revised Statutes (NRS) § 651.065 to dismiss another of his complaints about "encountering sex-based differential pricing at a casino." *Id.* The defendants note that under NRS § 651.065, "Nevada has not extended its antidiscrimination law to cover marketing-driven differential pricing." *Id.* That state-court case was removed to federal court, where the parties stipulated to dismissal with prejudice. *Id.* at 3 (citing *Horner v. Nevada (Horner I)*, No. 2:16-cv-2692 (D. Nev. Jan. 3, 2017)). Horner then filed another complaint "asserting an almost

---

[1] Initially, Horner did not specify whether he intended to sue the defendants in their individual or official capacities, but Horner clarifies in his opposition to the motion to dismiss that he brings this action against them in their individual capacities only. ECF No. 17 at 5.

3

identical claim" about differential pricing at a lounge, and he appealed when the state trial court dismissed his complaint. *Id.* (citing *Horner v. Jenkins (Horner II)*, 470 P.3d 278 (Nev. Ct. App. 2020) (unpublished)). The defendants point out that the Nevada Court of Appeals affirmed the trial court's dismissal, holding that Horner could not state a § 1983 claim against the defendants in their official capacities and alternatively finding that his allegations didn't amount to an equal-protection violation. *Id.* (citing *Horner II*, 470 P.3d at 278).

The defendants urge me to "take judicial notice of Horner's filings from other cases and consider them in granting this motion to dismiss without converting it to a motion for summary judgment." ECF No. 12 at 2 n.2 (citing *Callan v. N.Y. Cmty. Bank*, 643 F. App'x. 666, 667 (9th Cir. 2016 (unpublished) (other citations omitted)). "On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3d. Cir. 1999)). So because Horner's other lawsuits are matters of public record, I take judicial notice of them and consider them in my disposition of the defendants' motion to dismiss without converting it to a motion for summary judgment. *See Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 761–62 (C.D. Cal. 2015) (stating that despite the general caution against looking beyond the complaint to avoid converting a motion to dismiss into a motion for summary judgment, a court may nonetheless take judicial notice of matters in the public record).

"Issue preclusion, or collateral estoppel, precludes relitigation of an issue already litigated and determined in a previous proceeding between the same parties." *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018) (citing *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992)). And "[a] federal court applying issue preclusion 'must give state court judgments the

preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered.'" *Id.* (quoting *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001)). Because the judgment in *Horner II* was issued by a Nevada court, I thus look to the four elements of issue preclusion under Nevada law: (1) "the issues in both cases are identical, [(2)] the first ruling was 'on the merits and . . . final,' [(3)] the party against whom preclusion is sought was a party to or in privity with a party to the previous case, and [(4)] 'the issue was actually and necessarily litigated' in the previous case." *Id.* (quoting *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008)).

In analyzing these elements of issue preclusion, I compare the instant case to the one that Horner eventually appealed, *Horner II*. In that case, Horner brought a § 1983 civil-rights lawsuit against two NERC employees who were "serving as actors for . . . NERC . . . [and] were clothed with proper authority while acting under the color of Nevada state law." ECF No. 12-2 at 2 (Horner's amended complaint in *Horner II*). He claimed that the NERC employees violated his Fourteenth Amendment equal-protection rights when they dismissed his NERC complaint based on a lounge's refusal to give him half-priced drinks, despite offering that discount to female patrons. *Id.* at 3–6. The NERC ultimately dismissed Horner's complaint under NRS § 651.065, concluding that the statute allows differential pricing based on sex in places of public accommodation. *Id.* at 5; *see also Horner II*, 470 P.3d at 278. Horner sued, and the trial court dismissed his complaint. The Nevada Court of Appeals then affirmed the trial court's decision, reasoning that dismissal was proper because "§ 1983 claims cannot be maintained against state employees in their official capacities" and alternatively, that even if Horner sued the defendants in their individual capacities, he "fail[ed] to identify the deprivation of any cognizable federal right" by the NERC employees themselves, as he "failed to demonstrate, or even allege, that others similarly situated received different treatment by NERC." *Id.*

5

The first element of Nevada's issue-preclusion test is clearly met, as the issues in *Horner II* and this case are identical. The legal issue in *Horner II* was whether the NERC violated Horner's Fourteenth Amendment right to equal protection by dismissing his public-accommodations complaint—a complaint which was rooted in Horner's disagreement with a lounge's decision to give women a discount that was unavailable to men. *Id.* The same question is at issue here. The only factor that has changed is the specific place of public accommodations where Horner was denied access to "ladies' night" special pricing. But this difference is legally irrelevant. Nevada law states that "it is not unlawful and is not a ground for a civil action for any place of public accommodation to offer differential pricing, discounted pricing[,] or special offers based on sex to promote or market the place of public accommodation." NRS § 651.065. And a place of public accommodation is defined to include "[a]ny restaurant, bar, cafeteria, lunchroom, lunch counter, soda fountain, casino[,] or any other facility where food or spirituous or malt liquors are sold" and "[a]ny park, zoo, amusement park[,] or other place of recreation." *Id.* at § 651.050(3)(b), (j). The definition also broadly encompasses "[a]ny other establishment or place to which the public is invited or which is intended for public use." *Id.* at § 651.050(3)(n). While the lounge in *Horner II* is not the same establishment as the casino pool in the instant matter, both fall under Nevada's statutory definition of a place of public accommodation. So the Nevada Court of Appeals' reasoning as to the lounge—based on Horner's same substantive argument—applies with equal force to the casino pool here.

Horner seemingly takes issue with the second element. He argues that "this case is not a relitigation of past cases," ECF No. 17 at 2, arguing that "the past cases were never conclusive on the 'merits,'" but were rather decided based on procedural deficiencies. *Id.* at 6. The defendants counter that "[t]he *Horner II* decision was on the merits and final. There was no jurisdictional issue that prevented the Nevada courts from deciding the merits of the case." ECF No. 12 at 5

6

1  (citing *In re Parental Rights as to S.M.M.D.*, 272 P.3d 126, 130 (Nev. 2012) ("explaining that where
2  subject-matter jurisdiction is absent[,] 'the court cannot decide the case on the merits.'")).
3  Indeed, nothing in the *Horner II* opinion suggests that a jurisdictional issue precluded the Nevada
4  Court of Appeals from issuing a decision, and the written order contains a substantive
5  discussion of the merits of Horner's claims. *See generally Horner II*, 470 P.3d at 278. So I find that
6  the second element of the issue-preclusion test is met. And the third element is easily met, as the
7  party against whom preclusion is sought was Stephen J. Horner in both cases, *Horner II* and this
8  one.

9        As for the last element, Nevada courts examine whether "an issue [was] properly
10 raised . . . and . . . submitted for determination" to decide if it was actually litigated. *Alcantara v.*
11 *Wal-Mart Stores, Inc.*, 321 P.3d 912, 918 (Nev. 2014) (quoting *Frei v. Goodsell*, 305 P.3d 70, 72 (2013))
12 (other citation omitted). And "[w]hether the issue was necessarily litigated turns on whether
13 'the common issue was . . . *necessary to the judgment in the earlier suit*.'" *Id.* (quoting *Goodsell*, 305 P.3d
14 at 72 (quoting *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994))). Horner brought the
15 *Horner II* case in trial court, it was dismissed, and he then appealed. The legal issue of whether
16 Horner's equal-protection rights were violated was raised and submitted for determination, and
17 the Nevada Court of Appeals analyzed it, determining that dismissal was proper because the
18 defendants couldn't be sued under § 1983 in their official capacities. *Horner II*, 470 P.3d 278. The
19 appellate court's alternative reasoning was that Horner's Fourteenth Amendment claim was
20 based on the place of public accommodations denying his equal-protection rights by allegedly
21 discriminating against him based on his sex, not that the NERC itself somehow discriminated
22 against him based on his sex by dismissing his public-accommodations complaint. *Id.* The *Horner*
23 *II* decision turned on these issues, thus rendering them "necessary to the judgment in the earlier
24 suit." *Alcantara*, 321 P.3d at 918. The fourth element of the issue-preclusion test is therefore met.

Because all four elements of Nevada's issue-preclusion doctrine are satisfied here, I find that Horner is precluded from bringing this § 1983 claim against the NERC defendants. As the Nevada Court of Appeals has already decided on the merits these same issues that were actually and necessarily litigated between the same parties, "sound public policy . . . [urges the] limit[ation] of litigation by preventing a party who had one full and fair opportunity to litigate an issue from again drawing it into controversy." *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009) (quoting *Thompson v. City of N. Las Vegas*, 833 P.2d 1132, 1134–35 (Nev. 1992)). I need not and do not reach the defendants' alternative argument under FRCP 12(b)(6) that Horner's claim fails as a matter of law, as I conclude that issue preclusion bars Horner from re-raising this already litigated issue. Finally, because I grant the defendants' motion to dismiss this case in its entirety, no claims remain on which to proceed to trial. As a result, I deny Horner's "motion to proceed to trial" as moot.

### III. Conclusion

IT IS THEREFORE ORDERED that Horner's motion for recusal **[ECF No. 7]** and motion to proceed to trial **[ECF No. 18] are DENIED**.

IT IS FURTHER ORDERED that the defendants' motion to dismiss **[ECF No. 12] is GRANTED**. The Clerk of Court is directed to enter judgment accordingly and **CLOSE THIS CASE**.

DATED this September 21, 2022

_____
Cristina D. Silva
United States District Judge